IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WARNER SHOCKLEY,
      Plaintiff,

vs.                                     Case No. 3:04cv128/RV/EMT

JO ANNE B. BARNHART,
Commissioner of the
Social Security Administration,
Defendant.

_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of
28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of
administrative determinations under the Social Security Act and related statutes, 42 U.S.C. § 401,
*et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for
review of a final determination of the Commissioner of Social Security (Commissioner) denying
Plaintiff's application for disability insurance benefits under Title II of the Act.

I.      PROCEDURAL HISTORY

      Plaintiff filed an application for disability insurance benefits (DIB) under Title II of the
Social Security Act, 42 U.S.C. § 401 *et. seq*, alleging an onset of disability on May 26, 2002 (Tr.
52-54).[1]  Plaintiff's application was denied initially and on reconsideration (Tr. 31-32, 33-34).
Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 41-42).  A hearing was
held on October 16, 2003 (Tr. 184-203), at which Plaintiff was represented by counsel and testified
(Tr. 188-99), and a vocational expert (VE), J. Scott Lankford, Ph.D., also testified (Tr. 199-202).

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on June 10, 2004
(Doc. 7).

 On October 31, 2003, the ALJ rendered a decision finding that Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 11-20). On March 29, 2004, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 4-7).  The Appeals Council's action made the ALJ's decision the final decision of the Commissioner, and therefore subject to review in this court.  Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).  Plaintiff's appeal from the final decision of the Commissioner is now before this court.

II.      FINDINGS OF THE ALJ

        The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability (Tr. 18), and that Plaintiff had severe impairments including multilevel herniated discs, major depression and alcohol abuse,[2] but did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Part 404; Subpart P, Appendix 1 (Tr. 19).  The ALJ determined that Plaintiff could not return to his past "medium to heavy work," but that Plaintiff retained the residual functional capacity ("RFC") to perform "a significant range of light work" and that such work existed in significant numbers in the national economy (id.).  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

III.     STANDARD OF REVIEW

        Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating "[t]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied"); see also Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "A

---

        [2]Plaintiff does not challenge the ALJ's findings relating to his "major depression and alcohol abuse." Furthermore, this Court concludes that these findings are supported by substantial evidence in the record; thus, they are not discussed further in this Report and Recommendation.

determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir.1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, i.e., "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps. The steps are:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.      Evidence Adduced at ALJ Hearing Held on October 16, 2003

Plaintiff testified he was born on January 29, 1961, and had a high school level education (a GED) (Tr. 189).  He was most recently employed with Pittman's Pea Ridge Cash and Carry, but had not worked there since sustaining an on-the-job injury on May 26, 2002 (Tr. 189; *see also* Tr. 13, 109).  Plaintiff explained that he was injured as he and a co-worker attempted to unload a heavy door off a semi-truck and the weight of the door shifted onto him (Tr. 189), causing "significant multi-level disk herniations" (Tr. 191-92).  Before Plaintiff's employment with Pittman's, he worked as a pipefitter, a warehouse worker, and he built fiberglass boats (Tr. 190).  Although Plaintiff had not worked since the injury, he testified that he is capable of lifting fifteen pounds and sitting for a "couple of hours" (Tr. 192); thus, he believed he could probably perform "lighter" jobs where he would be required to lift no more than fifteen to twenty pounds on occasion and where he could sit and stand every hour or so during the day (Tr. 192-93, 195), although he stated he is incapable of bending and has difficulty twisting or squatting (Tr. 198).  For pain, Plaintiff utilizes a corset brace, takes a hot shower, and/or takes daily medication (Tylenol 3 and Flexeril) (Tr. 193).  Plaintiff testified he walks with a cane and sometimes has numbness in his legs (Tr. 198-99).  He also testified that cold weather makes his condition worse and that Flexeril makes him slow and

incapable of driving an automobile (Tr. 194).  On a daily basis, Plaintiff is capable of doing the dishes, washing clothes, feeding his animals, cutting the grass (albeit with some difficulty), playing Playstation games for a "couple of hours a day," and going to the store (Tr. 195).  Plaintiff did not describe his pain as "constant," rather he characterized it as "coming and going" (Tr. 198).  He also stated that on some days he can "live with it" better than others (*id.*).  Since the injury, Plaintiff has been treated for depression (Tr. 196), but has not received any counseling nor been prescribed any antidepressant medication (Tr. 197).

Dr. Lankford, the VE, testified that Plaintiff could not return to his past "heavy" or "medium" work, but could perform "lighter" work and that such jobs were available in the national and regional economies.   The VE's opinion was based upon Plaintiff having a "moderate concentration deficit, secondary to medication side effects"; however, per the VE, if Plaintiff had a "marked concentration deficit," there were no jobs available he could perform (Tr. 200-02).

B.      Evidence Within Plaintiff's Claims File

*Records from Santa Rosa Medical Center (SRMC)* - On June 12, 2002, an x-ray examination of Plaintiff's lumbar spine revealed normal alignment of the vertebra, and well-maintained disc spaces and body heights "with minimal disc space narrowing of L4-5 and L5-S1."   Additionally, slight spurring was seen projecting from the end plates, as well as moderate sclerosis at the "facet joint complexes of L4-5 and L5-S1" (Tr. 120).  The reviewing physician's overall impression was "mild degenerative changes of the lumbar spine" (*id.*).   On August 2, 2002, an MRI of Plaintiff's lumbar spine revealed the following: normal vertebral body heights, but "Significant disc disease with HNP's at L3-4, 4-5 and L5-S1.  At the L5-S1 level an extruded fragment is suspected extending toward the right." (Tr. 111).

*Treatment Notes from Bruce C. Raymon, M.D.* - Dr. Raymon treated Plaintiff from approximately August 6, 2002 to September 5, 2002.  Dr. Raymon reviewed Plaintiff's MRI and formed impressions similar to those made by the reviewing physician at SRMC.  Dr. Raymon thought Plaintiff's treatment options were pain management or laminectomies and diskectomies. With either course, though, Plaintiff would not be able to return to the heavy type of work he performed in the past (Tr. 125).

*Pain Questionnaire* - On September 15, 2002, Plaintiff completed a pain questionnaire, in which he described his pain as "constant"; indicated he was taking Lortab, but it did not alleviate

the pain; indicated his pain was a ten on a scale of one to ten; stated he could not walk or stand without the use of a cane; and stated he was basically unable to drive or do household chores such as yard work or home maintenance (Tr. 88-90). On another pain form completed on February 25, 2003, Plaintiff described his pain as lasting "all the time," but indicated he was taking no pain medication at that time (Tr. 97).

*Physical Consultative Examinations* - Mark A. Giovanini, M.D., performed a consultative examination on October 11, 2002. Plaintiff complained of mild back pain, but severe pain going down his right leg to his foot. He told Dr. Giovanini he discussed treatment options with Dr. Raymon and had decided upon surgery. Dr. Giovanini reviewed Plaintiff's MRI and observed disc herniation and degeneration, as well as spinal stenosis, and had no doubt that these injuries resulted from Plaintiff's on-the-job injury and that surgery was necessary (Tr. 128-29).

Richard W. Lucey, M.D., performed a consultative examination on March 6, 2003 (Tr. 138-40). Plaintiff told Dr. Lucey he injured his back on the job in May, 2002 while lifting a door. He developed acute low back pain and then right lower extremity pain and had not worked since that time. He told Dr. Lucey he was not taking any pain medication and had "elected to hold off on surgical intervention" (Tr. 138). Dr. Lucey's physical examination revealed, in part, the following:

> UPPER EXTREMITIES: Grip strength 5/5. Normal fine manipulatory movements. Full range of movement [ROM] of all major joints. No weakness, atrophy, sensory deficits or joint deformities. Normal DTR's.
> LOWER EXTREMITIES: No edema or varicosities. Peripheral circulation intact. Normal DTR's. Negative sitting root to full extension. Negative SLR's to 70° times 2 supine. Full [ROM] of all major joints. No effusion, crepitus, laxity or joint deformities.
> BACK: Posture is erect. Gait is normal. He has difficulty walking on his toes due to complaints of subjective discomfort on the bottom of his feet from callus formation. He can walk on his heels without weakness. He walks in Tandem without ataxia. Transfers slowly from sitting to supine due to subjective discomfort. [ROM] of thoracolumbar spine is significantly diminished.

(Tr. 139).

Dr. Lucey believed Plaintiff had "[h]erniated disc with associated spinal stenosis lumbar spine with right lower extremity sciatica" (*id.*).

Finally, Jeff L. Buchalter, M.D., performed a consultative examination on May 28, 2003 (Tr. 170-73). Dr. Buchalter reviewed Plaintiff's injury-related medical history and spoke with Plaintiff,

who complained of "severe, stabbing, burning, aching pain across the back and down right posterior lateral aspect into the ankle with associated weakness, numbness, and tingling" (Tr. 171). Plaintiff advised he was taking Lortab and other medications, with "no significant relief" (Tr. 172). Plaintiff's back displayed a "marked decrease in [ROM] for flexion and extension with right sided iliocostalis and multifidus trigger points" (*id.*). Dr. Buchalter assessed Plaintiff with "multilevel lumbar disc herniations, severe degenerative disc disease with lumbar radicular pain, unresponsive to conservative therapy" (Tr. 173). Plaintiff was offered epidural injections, which he elected to receive, and was prescribed Neurontin in addition to his current medication (*id.*). Dr. Buchalter opined that Plaintiff could perform, at most, light duty work (*id.*).

*Psychological Consultative Examination* - Plaintiff saw Steve Hirschorn, Ph.D., on March 21, 2003. Plaintiff described experiencing previous depressive episodes of mild degree related to marital discord and incarcerations, but a more severe depression since his injury and inability to work (Tr. 141). He described his back pain as a five on a scale of one to ten, and stated that the weather affects his pain level (Tr. 141). Dr. Hirshcorn concluded that Plaintiff exhibited depressive symptoms and that his injury was a major contributor to those symptoms, but this was not the primary reason for Plaintiff's unemployment (i.e., it was the injury, not the depression, causing the unemployment) (Tr. 143). He noted that Plaintiff's previous depressive episodes did not interfere with his employment (*id.*).

*Physical RFC Assessments* - A Physical RFC Assessment form was completed by Dr. David Guttman, M.D., on October 11, 2002. Dr. Guttman concluded that Plaintiff could occasionally[3] lift and/or carry (including upward pulling) 20 pounds, frequently[4] lift and/or carry (including upward pulling) 10 pounds, and stand and/or walk and/or sit (with normal breaks) for about six hours in an eight-hour workday. He also found Plaintiff had the unlimited ability, subject to the above restrictions, to push and/or pull (including operation of hand and/or foot controls) (Tr. 131). He believed Plaintiff had occasional postural limitations (i.e., in his ability to climb, balance, stoop, kneel, crouch or crawl), but no visual, communicative, environmental or manipulative (to reach, handle, finger or feel) limitations (Tr. 132-34). Although the handwriting is hard to decipher, it

---

[3]"Occasionally" means occurring from very little up to 1/3rd of an 8-hour workday (cumulative, not continuous).

[4]"Frequently" means occurring 1/3rd to 2/3rds of an an 8-hour workday (cumulative, not continuous) (Tr. 130).

appears that Dr. Guttman based his findings, at least in part, on his review of Plaintiff's MRI (Tr. 131).

Another Physical RFC Assessment form was completed by Dr. Edward W. Holifield, M.D., on March 27, 2003. Dr. Holifield reached the same conclusions as Dr. Guttman (Tr. 144-51). He, too, relied at least in part upon Plaintiff's MRI (Tr. 145).

*Mental RFC Assessment and Psychiatric Review* - On April 12, 2003, Eric D. Martin, Ph.D., opined that Plaintiff had no significant limitations in most mental activities, including understanding and memory, social interaction, adaptation, and sustained concentration and persistence (except he was moderately limited in his ability to "maintain attention and concentration for extended periods" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (Tr. 166-67)). He concluded that, although Plaintiff may have some difficulty sustaining attention and/or concentration at times, he is capable of routine, repetitive tasks performed on a relatively sustained basis (Tr. 168).

Dr. Martin also completed a Psychiatric Review Technique form on April 12, 2003. He assessed Plaintiff's metal impairments under both "Affective Disorders" and "Substance Addiction Disorders" (*see* Tr. 152). Under both categories, Dr. Martin concluded that Plaintiff suffered from impairments (i.e., depression and alcohol abuse (*see* Tr. 155, 160)), but did not satisfy the diagnostic criteria for either disorder. The impairments, in Dr. Martin's opinion, resulted in no episodes of decompensation of extended duration; only mild restrictions of daily living activities and in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace (Tr. 162).

*Treatment Notes from Zaher Kalaji, M.D.* - Plaintiff was treated by Dr. Kalaji from approximately September 5, 2003 to September 18, 2003. Plaintiff complained of abdominal pain, back pain, and muscle spasm. An abdominal ultrasound revealed no abnormalities and Plaintiff was prescribed Tylenol # 3 (Tr. 175-77).

V.    DISCUSSION

A.    Plaintiff raises two issues on appeal (Doc. 10 at 2). Plaintiff contends the ALJ erred: (1) in failing to properly apply the Eleventh Circuit pain standard and (2) in discrediting Plaintiff's subjective testimony based upon his limited daily activities.

1.      Pain Standard/Evaluation of Plaintiff's Credibility

a)      <u>Pain</u>

Pain is a non-exertional impairment.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1559 (11th Cir. 1995). Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423 (d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard."

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

<u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)); <u>Foote</u>, 67 F.3d at 1560.  In applying the pain standard, consideration is given to a claimant's subjective complaints and other factors such as the nature of a claimant's symptoms, the effectiveness of medication, the claimant's activities, and any conflicts between the claimant's statements and the record evidence.  *See* 20 C.F.R. § 404.1529(c); *see also* <u>Macia v. Bowen</u>, 829 F.2d 1009, 1011 (11th Cir. 1987) (degree of claimant's pain is established in light of all evidence). Furthermore, pain alone can be disabling, even when its existence is unsupported by objective evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

Here, the ALJ properly applied the three-part pain standard.  <u>First</u>, the ALJ found evidence of an underlying medical condition; specifically, multilevel herniated nucleus pulposus (Tr. 15).

<u>Second</u>, the ALJ considered whether objective medical evidence confirmed the severity of Plaintiff's alleged pain arising from that condition.  The ALJ concluded that the objective medical evidence did not support Plaintiff's allegation of total disability (*id.*).  The ALJ reached this

conclusion after considering Plaintiff's testimony concerning his ability to perform household chores and his hobbies (Tr. 15-16).  Plaintiff testified that he washed dishes, watched television, did laundry, cared for his pets, mowed about one-quarter of an acre of grass, and played his Playstation video game for about two hours per day (Tr. 16, 195).  In evaluating a claim of disability, the ALJ may properly consider the claimant's daily activities.  *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  Additionally, the ALJ considered Plaintiff's admission "to Dr. Buchalter . . . that he was capable of performing light work" (Tr. 16), to which Plaintiff takes issue, arguing that no such statement was made to Dr. Buchalter (*see* Doc. 10 at 7).  Plaintiff is correct in asserting that no such statement was made to Dr. Buchalter; however, Dr. Buchalter concluded that Plaintiff was capable of performing light work (Tr. 173) and Plaintiff admitted in testimony before the ALJ that he believed he was capable of lifting fifteen pounds and performing light work (*see* Tr. 192-93, 195).  Furthermore, the ALJ correctly noted Plaintiff's characterization of his pain as a five on a scale of one to ten (*compare* Tr. 16 (ALJ's decision) *with* Tr. 141 (Dr. Hirschorn's notes)).  Therefore, plaintiff's own testimony does not support a finding that the severity of the pain he experiences is "disabling."

Third, the ALJ considered whether Plaintiff's medical condition was of such a severity that it could reasonably be expected to give rise to the alleged pain (Tr. 16).  In finding that Plaintiff's medical condition was not severe enough to be totally disabling, the ALJ noted that "no treating or examining physician has opined that [Plaintiff] would be precluded from work-related activities" (*id.*).  The ALJ's assessment is correct.  Dr. Raymon believed Plaintiff could not return to the heavy type of work he performed in the past (Tr. 125), but did not say Plaintiff was precluded from performing light work.  Similarly, Dr. Buchalter opined that Plaintiff could perform no "more than light duty work" (Tr. 173).   The ALJ properly relied upon the fact that no examining physician found limitations consistent with Plaintiff's allegation of total disability.  *See* Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964-965 (8th Cir.1996) (lack of significant restrictions imposed by treating physicians supported ALJ's finding of no disability)).  Additionally, the ALJ noted that Plaintiff's "medical records are absent of significant medication use" (Tr. 16).  The record establishes that Plaintiff was taking over-the-counter medications (BC Powder and Motrin) after his injury in May, 2002, but before seeking treatment at the SRMC in July, 2002 (*see* Tr. 114, 116).  Upon discharge from the SRMC, he was prescribed  Naprosyn, Zanaflex

and Lortab (Tr. 13, 110), but the record reflects that Plaintiff was taking no pain medication in February or March, 2003 (*see* Tr. 97, 138).  Plaintiff was using Tylenol # 3 in September and October, 2003 (Tr. 176, 184, 193), and Flexeril, a muscle relaxant, in October, 2003 (Tr. 184, 193-94).  Thus, the ALJ's finding that Plaintiff's records did not demonstrate significant use of medication is supported by the record.  Although evidence in the record arguably exists to support a decision contrary to that reached by the ALJ (i.e., that Plaintiff's use of medication was significant), the court is limited in its inquiry, is not empowered to reweigh the evidence, and cannot substitute its judgment for that of the Commissioner.  *See generally* Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  Moreover, the medication, or lack thereof, was but one factor considered by the ALJ in concluding that Plaintiff's medical condition was not of such severity that it could reasonably be expected to give rise to totally disabling pain.  Thus, the ALJ properly applied the Eleventh Circuit pain standard.

b)   <u>Evaluation of Plaintiff's Credibility</u>

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  <u>Foote</u>, 67 F.3d at 1561-1562.  Furthermore, the articulated reasons must be based on substantial evidence.  <u>Jones v. Department of Health and Human Services</u>, 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See* <u>Hale v. Bowman</u>, 831 F.2d 1007, 1012 (11th Cir. 1987); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053-1054 (11th Cir. 1986).  The ALJ may consider any conflicts between the claimant's statements and the record of evidence.  *See* 20 C.F.R. §§ 404.1529(c); *see also* <u>Macia v. Bowen</u>, 829 F.2d 1009, 1011 (11th Cir. 1987) (degree of claimant's pain is established in light of all evidence).

As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  <u>Foote</u>, 67 F.3d at 1561-1562; <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1545 (11th Cir. 1988).  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See* <u>Smallwood v. Schweiker</u>, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific

credibility finding." Foote v. Chater, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

Here the ALJ discredited Plaintiff's allegation of total disability (Tr. 15).  However, as is required, the ALJ  articulated reasons for doing so, including Plaintiff's admission concerning his ability to perform light work,[5] his daily activities, the fact that no examining or treating physician found limitations consistent with his allegation of total disability, and the lack of significant medication use (Tr. 15-16), as discussed supra.

Furthermore, the ALJ's reasons for discrediting Plaintiff's allegation are supported by substantial evidence in the record.  First, Plaintiff himself believed he was capable of performing light work (see Tr. 192-93, 195).  Second, the opinions of Dr. Raymon (Tr. 125), Dr. Buchalter (Tr. 173) and the VE (Tr. 201),[6] as well as the information contained on both Physical RFC Assessment forms (see Tr. 130-37; 144-51), provide ample support for the ALJ's conclusion that Plaintiff was capable of performing light work.  Third, the record contains numerous inconsistencies concerning Plaintiff's pain and/or physical limitations, including the following: 1) Plaintiff described his pain as "coming and going" in one instance (Tr. 198), but described it as "constant" and lasting "all the time" in other instances (Tr. 88, 97); Plaintiff once described his pain as a "ten on a scale of one to ten" (Tr. 88), but on another occasion described it as a "five" on the same scale (Tr. 141); Plaintiff testified that he walks with a cane (Tr. 198-99) and stated he is unable "to walk or stand without a cane" (Tr. 88), but Dr. Giovanini observed that Plaintiff's gait was "ambulatory without the assistance of a walker or a cane" (Tr. 128) and Dr. Lucey observed a normal gait without the use of a cane, as well as calluses on the bottom of Plaintiff's feet (Tr. 139); finally, Plaintiff claimed in one instance that he was basically unable to do household chores or yard work (see Tr. 89-90), but in another instance he indicated he was able to do so (see Tr. 195).  Thus, the ALJ's conclusion that

---

[5]It is of no consequence that the ALJ erroneously found that Plaintiff admitted this to Dr. Buchalter, because Plaintiff admitted this during his testimony before the ALJ.

[6]As noted, above, the VE opined that Plaintiff could not return to his past work, but could perform light work.  This opinion was based upon Plaintiff having a "moderate concentration deficit."  If Plaintiff had a "marked concentration deficit," the VE believed there were no jobs available Plaintiff could perform (Tr. 202).  No evidence in the record supports a finding of a "marked" concentration deficit.  Dr. Martin concluded that Plaintiff had only moderate concentration limitations (see Tr. 166-67); similarly, Dr. Hirshcorn believed any inability to return to work was due to physical limitations, not mental limitations (see Tr. 143).

Plaintiff's "testimony and statements are credible only to the extent found herein" (i.e., the ALJ accepted Plaintiff's testimony concerning daily activities, his ability to perform light work, and his rating of pain as a five on a ten-point scale, but rejected Plaintiff's claim of inability to work) (*see* Tr. 15-16), is supported by substantial evidence in the record, as Plaintiff's claim of inability to work is refuted by his own statements, the inconsistencies in his statements, and the other evidence of record. Thus, the ALJ did not err in assessing Plaintiff's credibility.

> 2.      Discrediting Plaintiff's Subjective Testimony Based Upon Limited Daily Activities

Plaintiff contends the ALJ erred "as a matter of law in discrediting [Plaintiff's] subjective testimony regarding the severity of his impairments based upon his limited daily activities," claiming that such activities are not dispositive evidence of one's ability to perform sedentary work (Doc. 10 at 11). Plaintiff is correct in asserting that such activities are not dispositive, *see* Venette v. Apfel, 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998), however the ALJ's conclusions did not rely exclusively upon Plaintiff's daily activities. This was just one factor considered by the ALJ in his overall assessment (Tr. 12-17). Furthermore, as noted *supra*, the ALJ may properly consider daily activities when evaluating subjective complaints of disabling pain and other symptoms. *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i). Although 20 C.F.R. § 404.1572(c) provides that activities such as "taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" are generally not considered "substantial gainful activity," this regulation prevents a non-disability determination at the first step of the sequential evaluation process on the basis of daily activities. 20 C.F.R. § 404.1520(b). The regulations do not, however, prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(e). Macia, 829 F.2d at 1012. Thus, the ALJ did not err.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 13<u>th</u> day of June, 2005.

<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**